■ In the Matter of CATHIE L. YOST-CRAWFORD, Petitioner, v SHELLA L. SUTTON, Appellant, and ANTHONY NEWHART, Respondent. (Proceeding No. 1.) In the Matter of ANTHONY NEWHART, Respondent, v SHELLA L. SUTTON, Appellant. (Proceeding No. 2.) (And Another Related Proceeding.) [887 NYS2d 331]—

Kavanagh, J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered September 24, 2008, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' child.

Respondent Shella L. Sutton (hereinafter the mother) and Anthony Newhart (hereinafter the father) have a daughter (born in 2002) who lived with the mother in Pennsylvania near the child's grandparents and extended family while the father, a member of the military, was stationed in Iraq. Upon the father's return to the United States, the mother moved with the child to a location in Broome County so that she could permanently reside with her paramour. Upon his discharge from military service in December 2004, the father resumed his residence in Pennsylvania, but had regular visits with the child and paid child support.

In February 2008, petitioner Cathie L. Yost-Crawford (hereinafter the maternal grandmother) filed a petition (proceeding No. 1) for custody of the child alleging that the child had been consistently neglected and abused while in the mother's care and that, as a result, she had become the child's primary caretaker. Two weeks later, the father brought his own petition (proceeding No. 2) seeking custody of the child. Family Court initially directed that the mother have temporary custody, but determined that the father should have extensive access to the child through scheduled visitation. Not long after this temporary order was issued, the father filed a petition alleging that the mother had denied him access to the child and refused to comply with the visitation schedule as contemplated by Family Court's order.[1] After a hearing was conducted, Family Court found that the mother had willfully violated the terms of its order by denying the father visitation and awarded custody of the child to the father. The mother now appeals.[2]

Because these proceedings called for an initial determination regarding the custody of the child, Family Court was required to determine what custodial arrangement best served the child's interests, taking into account a number of relevant factors, including maintaining the child's stability, the child's wishes,

---

**1.** The mother also filed a violation petition against the father, which Family Court summarily dismissed.

**2.** The mother has abandoned any challenge to Family Court's finding that she had willfully violated the court's order by failing to address this issue in her submissions on this appeal (*see Matter of Filippelli v Chant*, 40 AD3d 1221, 1222 n [2007]).

" 'the home environment with each parent, each parent's past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent' " (*Matter of Holle v Holle*, 55 AD3d 991, 991-992 [2008], quoting *Matter of Anson v Anson*, 20 AD3d 603, 604 [2005], *lv denied* 5 NY3d 711 [2005]; *see Kaczor v Kaczor*, 12 AD3d 956, 958 [2004]; *Matter of Smith v Miller*, 4 AD3d 697, 698 [2004]). At the outset, we note, as found by Family Court, that the mother was "involved in an increasingly chaotic and dysfunctional lifestyle from which the child should be protected." She had, when the hearing was conducted, acknowledged sharing a trailer with her paramour and at least one other adult, as well as six dogs and numerous cats. The paramour suffers from tuberculosis, has been diagnosed with a mental illness and, on a number of occasions, physically abused the mother in the child's presence. The mother admits to having heated arguments with the paramour in the child's presence and acknowledges that she has significant anger management issues that have contributed to the volatile nature of that relationship. Her confrontations with her paramour have, on occasion, become so intense that police intervention was required and, in one instance, resulted in the mother and the child being evicted from the trailer by the paramour. In addition, the mother is unemployed and has not been able to adequately provide for the child's medical needs, including obtaining basic vaccinations so that the child could be properly registered for school. Also, credible evidence was presented at the hearing that the mother refused to bring the child to a dentist even though the child suffered from an abscessed tooth. It was the maternal grandmother who assumed responsibility for obtaining the necessary vaccinations so that the child could attend school and arranged for her to receive appropriate dental care. We also note that the mother, by her persistent refusal to comply with Family Court's order regarding the father's visitation rights, fails to recognize that it is in the child's best interests that she have a meaningful relationship with her father, as well as other members of her immediate family.

As for the father, he enjoys a good relationship with the child's grandparents and other members of her extended family and has made a sincere effort to insure that they are an important part of the child's daily activities when she is entrusted to his care. In that regard, when the child is with him, the maternal grandmother provides day care as needed and assists the father in seeing to her medical needs. Despite the acrimony that exists between the father and the mother, he has sought to cultivate a meaningful relationship between the mother and her daughter

establishing that he is aware that such a relationship is in the child's best interests. He is gainfully employed, has health insurance that provides coverage for the child and is presently taking college courses in pursuit of a higher degree. Considering the totality of the circumstances and according deference to Family Court's assessment of credibility of the witnesses who appeared and testified (*see Matter of Omahen v Omahen*, 64 AD3d 975, 977 [2009]; *Matter of Samuel v Samuel*, 64 AD3d 920, 921 [2009]; *Matter of Calandresa v Calandresa*, 62 AD3d 1055, 1056 [2009]; *Matter of Clupper v Clupper*, 56 AD3d 1064, 1066 [2008]), we conclude that it properly weighed the applicable factors in ascertaining the best interests of the child and reached a determination that has a sound and substantial basis in the record (*see Matter of Smith v Smith*, 61 AD3d 1275, 1277-1278 [2009]; *Matter of Eck v Eck*, 57 AD3d 1243, 1245 [2008]).

Finally, as for Family Court's decision that the paramour not be present when the mother visits with the child, we note that the paramour did not testify or attend any of the hearings and, as such, has shown little interest in developing any type of relationship with the child. We also take note of the history of the paramour's relationship with the mother, which compels the conclusion that any contact between the paramour and the child is not in the child's best interests. Therefore, we find no reason to disturb that part of Family Court's order directing that the mother's visitation with the child shall occur outside the presence of her paramour.

Mercure, J.P., Spain, Malone Jr. and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.